## FARMINGTON v. PILLSBURY.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MAINE.

Argued March 16, 17, 1885.—Decided March 30, 1885.

When a plaintiff who has no real interest in the subject matter of a suit pending in a Circuit Court of the United States, permits his name to be collusively used for the purpose of giving jurisdiction, the suit should be dismissed under the provision of § 5 Act of March 3, 1875, 18 Stat. 472.

After a decision by a State court that certain bonds issued by a municipal corporation were void as issued under an unconstitutional act, several bondholders, citizens of the State, cut the coupons from their bonds and transferred them to a citizen of another State, who gave to the agent of the owners of the coupons a note of hand for much less than the face value of the coupons, and an agreement that if he should succeed in collecting the full amount of the coupons, he would pay him fifty per cent. of the amount collected from the corporation. The new holder thereupon brought suit on the coupons in his own name, against the municipal corporation, in the Circuit Court of the United States. *Held*, That this was within the prohibition of § 5 Act of March 3, 1875, 18 Stat. 472, as to parties improperly or collusively made for the purpose of creating a case cognizable by a Circuit Court of the United States.

This was a suit upon coupons for semi-annual interest on the bonds of the Farmington Village Corporation, and among the defences set up was one to the effect that the plaintiff was not a *bona fide* holder of the coupons in suit, but that they were placed in his hands merely for the purpose of bringing a suit in the Circuit Court of the United States. The case was tried by the court without the intervention of a jury and came here with a special finding of facts, and a certificate of division of opinion between the judges holding the court upon certain questions arising at the trial. Among the questions certified was this: "Whether the plaintiff can maintain an action in this court upon the coupons declared upon, the bonds or instruments to which they were attached not being assigned to him, but having been issued to and always held by citizens of Maine."

The facts applicable to this question, which appeared in the special findings, were these:

The bonds from which the coupons were cut were issued by Farmington Village under a private statute passed by the Legislature of Maine authorizing the village corporation to raise money to aid in the extension of the road of the Androscoggin Railroad Company to some point within or near the limits of the village. The bonds were issued by the assessors and treasurer of the village to a committee of citizens, who were authorized to sell and dispose of them for the purpose mentioned in the statute. Before the committee received any of the bonds from the assessors and treasurer, and before July 1, 1870, which was the date of the bonds, Jonas Burnham and eleven others, all citizens, owners of property subject to taxation and tax payers in the village corporation, filed a bill in equity in the Supreme Judicial Court of the State of Maine, in Franklin County, against the railroad company, the assessors and treasurer, and the committee of the village, to enjoin them from issuing the bonds, on the ground of a want of authority of law for that purpose. This suit was entered at the July term, 1870, of the court, and held under advisement until the 3d of August, 1872, when the bill was dismissed without prejudice. After this, on the 12th of August, 1872, other tax-payers filed another bill of the same general character against the same defendants and the village corporation to obtain substantially the same relief. To this bill the village corporation filed an answer and the railroad company a general demurrer. The case was heard by the court at the July term, 1873, and kept under advisement until August 27, 1878, when a decree was rendered sustaining the bill and granting the injunction prayed for. The opinion of the court is reported in 70 Maine, 515, and is to the effect that the statute authorizing the village corporation to aid the extension of the railroad was unconstitutional and void. This opinion was concurred in by only four of the eight judges composing the court at the time of the hearing. One judge, who sat in the cause, died while the opinion was in his hands for examination, and his death made the four judges a majority of the court at the time of the decision.

Notwithstanding the pendency of the original suit, the bonds were put out and, with the exception of a few only,

were bought by citizens of Farmington and members of the village corporation. The coupons in suit were collected from various holders of the bonds, all residents of Farmington and citizens of the State of Maine, about May, 1880, and transferred to the plaintiff, a citizen of Massachusetts, separate from the bonds. The plaintiff gave his note and agreement for these coupons to the agent of the holders who had taken them to dispose of, as follows:

"$500.　　　　　　　　　　　　BOSTON, *May* 5, 1880.
"For value received I promise to pay to P. Dyer five hundred dollars in two years, with interest.
　　　　　　　　　　　　　　　E. F. PILLSBURY."

"BOSTON, *May* 5, 1880.
"Whereas I have this day bought of P. Dyer, of Farmington, coupons of the Farmington Village Corporation to the amount of $7,922, and given him my note for the same; as a further consideration for said coupons, I agree that, if I succeed in collecting the full amount of said coupons, I will pay him fifty per cent. of the net amount collected above said five hundred dollars, and pay him as soon as I collect the money from said corporation.　　　　　　E. F. PILLSBURY."

This suit was begun July 1, 1880.

*Mr. William L. Putnam,* (*Mr. Thomas H. Haskell* was with him) for plaintiff in error.

*Mr. Charles F. Libby* for defendant in error argued the case on its merits, and also on the question of jurisdiction. On the latter point he said, this assignment of error is based on inferences which are sought to be drawn from the special finding, but are not included in it. This court cannot treat the finding as a report of evidence from which other resulting facts can be deduced. This function, we understand, this court has repeatedly refused to perform, and to have held that a special finding must contain "a statement of the ultimate facts or propositions which the evidence is intended to establish, and not

the evidence on which those ultimate facts are supposed to rest," *Burr* v. *Des Moines Co.*, 1 Wall. 98, 102. See also, *Suydam* v. *Williamson*, 20 How. 427, 432; *United States* v. *Adams*, 6 Wall. 101; *Mumford* v. *Wardwell*, 6 Wall. 423; *Barnes* v. *Williams*, 11 Wheat. 415. "Whether the foundation of the judgment be a statement of facts, a special verdict, or a special finding, the statement must be sufficient in itself, without inferences or comparisons or balancing of testimony or weighing evidence, to justify the application of legal principles which must determine the case." *Smith* v. *Sac County*, 11 Wall. 139. It will hardly be contended that the Circuit Court found a collusive transfer of these coupons, for the judges found the fact of transfer and the consideration of the same and did not find collusion, and on these points there was no disagreement between the judges. The fact that this point was raised in the pleadings and not sustained by the court seems to us conclusive, as the court was obliged to pass upon it in order to sustain the plaintiff's right of action. The finding is in favor of the plaintiff and gives the details of the transaction. Unless this court is to hold that such a transaction cannot be genuine, the absolute sale of the coupons to the defendant in error is established, and there is nothing in the case to contradict this fact.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court. After making the foregoing statement of the facts he continued:

By the original judiciary act of September 24, 1789, ch. 20, 1 Stat. 73, it was provided, § 11, that no District or Circuit Court should "have cognizance of any suit to recover the contents of any promissory note or other chose in action in favor of an assignee, unless a suit might have been prosecuted in such court to recover the said contents if no assignment had been made, except in cases of foreign bills of exchange." The same act provided, § 12, for the removal of suits from a State court to the Circuit Court by a defendant, and he was required to file his petition for such a removal at the time of entering his appearance in the State court.

By the act of March 3, 1875, ch. 137, § 1, 18 Stat. 470, § 11

of the act of 1789 was changed so as to provide that the Circuit and District Courts should not have cognizance of any suit founded on contract in favor of an assignee, unless a suit might have been prosecuted in such court to recover thereon if no assignment had been made, except in cases of promissory notes negotiable by the law merchant and bills of exchange. By the same act, §§ 2 and 3, removals could be effected by either party, when the necessary citizenship existed, if a petition was filed therefor, in the State court before or at the term at which the cause could be first tried, and before the trial thereof. This last act also contained this provision, § 5: "If, in any suit commenced in a Circuit Court or removed from a State court, . . . it shall appear to the satisfaction of the Circuit Court, at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a suit or controversy properly within the jurisdiction of said Circuit Court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this act, the said Circuit Court shall proceed no further therein, but shall dismiss the suit or remand it to the State court from which it was removed, as justice may require, and shall make such order as to costs as shall be just, but the order of the Circuit Court, dismissing or remanding said cause to the State court, shall be reviewable by the Supreme Court on writ of error or appeal, as the case may be."

Under the act of 1789, the jurisdiction of the courts of the United States, in suits by assignees of choses in action, was confined within narrow limits, and there was comparatively little danger of collusion to create a case of that character cognizable by those courts, because, if the owner of the claim could sue in his own name, there would ordinarily be no motive for transferring it to another to bring the action. In that act promissory notes and inland bills of exchange, the form of negotiable securities most used in the transaction of ordinary business by citizens of the United States, were included in the prohibition of suits by assignees.

The subject of colorable transfers to create a case for the jurisdiction of the courts of the United States was presented for the most part in suits for the recovery of real property, when a conveyance had been made by a citizen of the State in which the suit must be brought to a citizen of another State. At a very early day it was held in this class of cases that the citizenship of the parties could not be put in issue on the merits, but that it must be brought forward at an earlier stage in the proceedings by a plea in abatement, in the nature of a plea to the jurisdiction, and that a plea to the merits was a waiver of such a plea to the jurisdiction. *De Wolf* v. *Rabaud*, 1 Pet. 476, 498; *Evans* v. *Gee*, 11 Pet. 80, 83; *Sims* v. *Hundley*, 6 How. 1, 5; *Smith* v. *Kernochen*, 7 How. 198, 216; *Jones* v. *League*, 18 How. 76, 81; *De Sobry* v. *Nicholson*, 3 Wall. 420, 423. And upon the question of transfer it was uniformly held that, if the transaction was real and actually conveyed to the assignee or grantee all the title and interest of the assignor or grantor in the thing assigned or granted, it was a matter of no importance that the assignee or the grantee could sue in the courts of the United States when his assignor or grantor could not. A suit by such an assignee or grantee would present, in reality, a controversy between the plaintiff on the record and the defendants. *McDonald* v. *Smalley*, 1 Pet. 620; *Smith* v. *Kernochen*, supra; *Barney* v. *Baltimore*, 6 Wall. 280, 288. But it was equally well settled that if the transfer was fictitious, the assignor or grantor continuing to be the real party in interest, and the plaintiff on record but a nominal or colorable party, his name being used only for the purpose of jurisdiction, the suit would be essentially a controversy between the assignor or grantor and the defendant, notwithstanding the formal assignment or conveyance, and that the jurisdiction of the court would be determined by their citizenship rather than that of the nominal plaintiff. *Maxwell* v. *Levy*, 2 Dall. 381; *S. C.* 4 Dall. 233, decided by Mr. Justice Iredell and Peters J. in the Pennsylvania circuit in 1797. *Smith* v. *Kernochen*, supra; *Barney* v. *Baltimore*, supra.

Such was the condition of the law when the act of 1875 was passed, which allowed suits to be brought by the assignees of

promissory notes negotiable by the law merchant, as well as of foreign and domestic bills of exchange, if the necessary citizenship of the parties existed. This opened wide the door for frauds upon the jurisdiction of the court by collusive transfers, so as to make colorable parties and create cases cognizable by the courts of the United States. To protect the courts as well as parties against such frauds upon their jurisdiction, it was made the duty of a court, at any time when it satisfactorily appeared that a suit did not "really and substantially involve a dispute or controversy" properly within its jurisdiction, or that the parties "had been improperly or collusively made or joined . . . for the purpose of creating a case cognizable" under that act, "to proceed no further therein," but to dismiss the suit or remand it to the State court from which it had been removed. This, as was said in *Williams* v. *Nottawa*, 104 U. S. 209, 211, "imposed the duty on the court, on its own motion, without waiting for the parties, to stop all further proceedings and dismiss the suit the moment a fraud on its jurisdiction was discovered." The old rule established by the decisions, which required all objections to the citizenship of the parties, unless shown on the face of the record to be taken by plea in abatement before pleading to the merits, was changed, and the courts were given full authority to protect themselves against the false pretences of apparent parties. This is a salutary provision which ought not to be neglected. It was intended to promote the ends of justice, and is equivalent to an express enactment by Congress that the Circuit Courts shall not have jurisdiction of suits which do not really and substantially involve a dispute or controversy of which they have cognizance, nor of suits in which the parties have been improperly or collusively made or joined for the purpose of creating a case cognizable under the act. It does not, any more than did the act of 1789, prevent the courts from taking jurisdiction of suits by an assignee when the assignment is not fictitious, and actually conveys all the interest of the assignor in the thing assigned, so that the suit when begun involves really and substantially a dispute or controversy in favor of the assignee for himself and on his own account against the defendant; but it does

in positive language provide that, if the assignment is collusive and for the purpose of enabling the assignee to sue in the courts of the United States for the benefit of the assignor, when the assignor himself could not bring the action, the court shall not proceed in the case. In this respect it goes further than the rulings of the courts under the act of 1789. Under its provisions the holders of promissory notes or of foreign or domestic bills of exchange, who are citizens of a State in which the decisions of the courts have been adverse to their interests, cannot by collusive transfers to citizens of other States create a case apparently cognizable in the courts of the United States, and have it prosecuted by their assignees in those tribunals for their benefit, in the hope of securing an adjudication in that jurisdiction more favorable to their interests. The courts of the United States were not created under the Constitution for any such purpose. Except in certain specified cases they have no jurisdiction of controversies between citizens of the same State.

We are clearly of opinion that this case falls within the prohibitions of the statute. The bonds to which the coupons now in suit were attached were all bought as early as 1871 or 1872 by citizens of the State of Maine, who held and owned the bonds themselves when this suit was brought. Their purchases were made while a suit was pending in the courts of the State to test the validity of the bonds. On the 27th of August, 1878, the highest court of the State decided in effect that the bonds were inoperative and void, for want of constitutional power in the village corporation to issue them. Almost two years after this decision these coupons, to the amount of $7,922, were collected from various holders of bonds, all residents of the village of Farmington and citizens of Maine, and transferred, separate from the bonds, to the present plaintiff, a citizen of Massachusetts, under an arrangement by which the plaintiff gave to the agent of the holders of the coupons his non-negotiable promissory note for $500, payable in two years from date, with interest, and agreed, "as a further consideration for said coupons," that if he succeeded in collecting the full amount thereof he would pay the agent, as soon as the money was got from the corporation, fifty per cent. of the net

amount collected above the $500. This suit, begun July 1, 1880, in the name of the plaintiff, is the result of that arrangement. It is a suit for the benefit of the owners of the bonds. They are to receive from the plaintiff one-half of the net proceeds of the case they have created by their transfer of the coupons gathered together for that purpose. The suit is their own in reality, though they have agreed that the plaintiff may retain one-half of what he collects for the use of his name and his trouble in collecting. It is true the transaction is called a purchase in the papers that were executed, and that the plaintiff gave his note for $500, but the time for payment was put off for two years, when it was, no doubt, supposed the result of the suit would be known. No money was paid, and as the note was not negotiable, it is clear the parties intended to keep the control of the whole matter in their own hands, so that if the plaintiff failed to recover the money he could be released from his promise to pay. In the language of Mr. Justice Field, speaking for the court in *Detroit* v. *Dean*, 106 U. S. 537, 541, applied to the facts of this case, the transfer of the coupons was "a mere contrivance, a pretence, the result of a collusive arrangement to create" in favor of this plaintiff "a fictitious ground of federal jurisdiction," so as to get a re-examination in that jurisdiction of the question decided adversely to the owners of the coupons by the highest judicial tribunal of the State. *Hawes* v. *Oakland*, 104 U. S. 450, 459; *Hayden* v. *Manning*, 106 U. S. 586; *Bernards Township* v. *Stebbins*, 109 U. S. 341.

We, therefore, say, in answer to the first question certified, that the plaintiff cannot maintain the action in the Circuit Court upon the coupons declared upon.

*The judgment of the Circuit Court is reversed, and the cause remanded, with instructions to dismiss the suit for want of jurisdiction and without prejudice.*