## IMPERIAL REFINING Co. *v.* WYMAN *et al.*

(*Circuit Court, N. D. Ohio, E. D.*  April 8, 1889.)

**1. PLEADING—PLEA IN ABATEMENT—PROOF OF CITIZENSHIP.**

Notwithstanding the practice conformity act of 1872 and the judiciary act of 1875, and notwithstanding the practice in Ohio of traversing all the averments of the petition by the general denial, it remains the law that a plea to the jurisdiction of the court denying the averments of the diverse citizenship, must be, in the federal courts of Ohio, by a special plea of abatement separately pleaded and tried. Any other plea to the merits is a waiver of the plea in abatement; and all evidence upon the subject of the citizenship is irrelevant if there be no plea in abatement raising the question of jurisdiction, or some other plea to which that evidence is pertinent and relevant.

**2. SAME—JURISDICTIONAL QUESTION—DIRECTING ISSUE—AMENDMENT OF PLEADING.**

If, however, in the absence of a special plea to the jurisdiction, the court can see by the proof that there is a jurisdictional question as to the citizenship of the parties, it must, under the fifth section of the judiciary act of 1875, direct an issue to be made by the pleadings, try that question, and dismiss the suit if there be no jurisdiction; and therefore an application by the defendant to amend his pleadings in order to raise the question will and must be granted, even after the trial has commenced.

**3. SAME—TRAVERSING AVERMENT OF CITIZENSHIP OF CORPORATION.**

The proper form of traversing the averment of the citizenship of a plaintiff corporation, where upon special facts it is claimed that the law under which the association is organized does not create a corporation, but only a limited partnership with a suable capacity, suggested. *Held,* that it may be done by either a general or a special traverse, but the latter is the better form.

**4. LIMITED PARTNERSHIPS — CAPACITY TO SUE — JURISDICTION OF FEDERAL COURTS—CORPORATIONS.**

The limited partnerships of Pennsylvania having a capacity to sue and be sued by the partnership name and exercising other functions analogous to or identical with those of corporations, are nevertheless not corporations entitled to sue as artificial citizens of the states, within the purview of the constitution and laws of the United States in that behalf. The federal courts will not extend the creation of such artificial citizens of the states in order to acquire jurisdiction over organizations that are not corporations, strictly so called.

**5. SAME—SUIT AS CORPORATION—AMENDMENT OF PLEADING.**

Where a limited partnership sued after the manner and style of a corporation, alleging itself to be such under the laws of another state, and it was ruled that it was not entitled to that liberty or privilege in the federal courts, it was allowed to amend its pleading, and to sue as individuals, they being citizens of other states than that in which the suit was brought, suing after the manner and style of partners in the ordinary way of suits by partnerships, but not in its partnership name pure and simple, since that would not disclose the facts as to citizenship, but would be to treat them as corporations are treated in that matter in its relation to the jurisdiction of the federal courts.

At Law.

*Henderson, Kline & Tolles,* for plaintiff.

*L. A. Russell* and *John W. McVicker,* for defendants.

HAMMOND, J. The plaintiff's declaration or petition avers that it is an incorporation duly organized under and by virtue of the laws of the state of Pennsylvania, and that the defendants are citizens of the state of Ohio. The answer admits that the defendants are citizens of Ohio,

but otherwise "denies each and every allegation and averment of the said petition not above specifically admitted." It is conceded that under the practice in Ohio this general denial puts in issue the averments of the petition as to the incorporation, and under it the defendant has offered proof, subject to the exception of the plaintiff, which has been reserved, tending to show that the plaintiff is not an incorporation at all under any law of Pennsylvania, but only a limited partnership, which is composed of persons unknown, who hold some 3,000 certificates of shares of interest in the capital of the concern; wherefore it is contended that the court has no jurisdiction, it not being shown that the averment of the plaintiff in that behalf is true. The plaintiff was organized under the Pennsylvania acts of 1874, entitled, in Brightley's Digest of Purdon's Laws of Pennsylvania for 1873–1878, p. 1891, "Limited Partnerships," which do indeed provide for an apparently different character of organized associations than those "Corporations" provided for by another chapter of the same laws found under this latter title in the same digest at page 1839. Yet the plaintiff claims that, whatever distinctions there may be between the two classes of organizations, the laws under which it is organized give it a suable capacity and all other essential attributes necessary to create a "corporation" to all intents and purposes within the purview of the laws of the United States regulating the jurisdiction of its courts over corporations; and the learned counsel cite the case of *Insurance Co.* v. *Massachusetts*, 10 Wall. 566, which was not, however, one involving the jurisdiction of the federal courts in its relation to corporations as "citizens" of the states, and does not decide the point sought to be raised here, unless it may be inferentially; and it will be found, I think, that it is not safe always to infer very much, however naturally, from such decisions upon a question like that suggested here, particularly in view of the dissenting opinion in that case. However, we are not at this moment called upon to decide that question, if it shall arise at all in this case. The objection of the plaintiff to the testimony is that it is incompetent and irrelevant to the issue made by the pleadings, because, it is urged, a general denial cannot, in the federal courts, raise this jurisdictional question, since a plea to the merits waives the matter of jurisdiction, if proper averments appear of record to confer it, which can only be challenged by a special plea in that behalf. Such was undoubtedly the law prior to the practice conformity act of 1872, and the judiciary act of 1875, (Rev. St. § 914; 18 St. 472, § 5,) and is still the law, notwithstanding those acts, in my opinion. And there is a good reason for it, found in the fact that in a certain but very particular and somewhat peculiar sense the federal courts are tribunals of limited jurisdiction; and the rule that the jurisdiction of all courts of limited powers in that general sense which is not at all applicable to the federal courts, must exhibit itself, has been applied to them nevertheless, and their jurisdiction must appear upon the technical record. So that, if we permit a mere general denial to put in issue these special averments of jurisdiction along with all other averments, we should have the jurisdictional facts tried and settled without any minute made of that issue upon the technical record,

and there would be no showing whether the suit failed for want of·juris-. ·diction in this limited tribunal or upon other grounds of a more formidable effect when passed into the general judgment. Therefore, if for no other reason,· if the state courts, which are not troubled with this limited quality in their jurisdiction, have prescribed for them a different practice on this subject, the federal courts cannot, in the nature of the matter, adopt that practice, and it will be observed that the act of 1872 only requires us to conform to the state practice "as near as may be," which saying was inserted in the act for the very purpose of not embarrassing the courts of the United States with incongruous rules of state practice, such as that relied on here would be. Besides this, I find the decisions of the supreme court of the United States as uniform on this point since the practice conformity act of 1872 as before, though I find in them no mention of that act in its relation to this matter. *D' Wolf* v. *Rabaud*, 1 Pet. 476, 498; *Society* v. *Pawlet*, 4 Pet. 480, 501; *Evans* v. *Gee*, 11 Pet. 80, 83; *Smith* v. *Kernochen*, 7 How. 198, 216; *Sheppard* v. *Graves*, 14 How. 505, 512; *Jones* v. *League*, 18 How. 76, 81; *Dred Scott* v. *Sandford*, 19 How. 393, 400–403, 458, 472–475, 518, 532, 567–571, —where this rule of federal pleading is fully and thoroughly discussed upon reason and authority; *Spencer* v. *Lapsley*, 20 How. 264; *Railroad Co.* v. *Quigley*, 21 How. 202; *De Sobry* v. *Nicholson*, 3 Wall. 420, 423; *U. S.* v. *Insurance Cos.*, 22 Wall. 99, 100; *Pullman* v. *Upton*, 96 U. S. 328, 329; *Express Co.* v. *Railroad Co.*, 99 U. S. 191, 198; *Williams* v. *Nottawa*, 104 U. S. 209; *Farmington* v. *Pillsbury*, 114 U. S. 138, 143, 5 Sup. Ct. Rep. 807; *Hartog* v. *Memory*, 116 U. S. 588, 6 Sup. Ct. Rep. 521. As to the act of 1875, § 5, *supra*, one would suppose, after the decisions in *Williams* v. *Nottawa*, *supra*, and *Farmington* v. *Pillsbury*, *supra*, that this federal rule of pleading had been designedly changed, so that the court should, as the act seems to direct, dismiss a case whenever and however the want of jurisdiction might appear; and the latter of the above cases specifically says that "the old rule established by the decisions, .which required all objections 'to the citizenship of the parties, unless shown on the face of the record, to be taken by plea in abatement before pleading to the merits, was changed, and the courts were given full authority to protect themselves against the false pretenses of apparent parties. * * ·* It was intended to promote the ends of justice, and is equivalent to· an express enactment by congress that the circuit courts shall not have jurisdiction of suits which do not really and substantially involve a dispute or controversy, of which they have cognizance, nor of suits in which the parties have been improperly or collusively made or joined for the purpose of creating a case cognizable under the act." And the other case quite as emphatically declares that "in extending a long way the jurisdiction of the courts of the United States, congress was specially careful to guard against the consequences of collusive transfers to make parties, and imposed the duty on the court, on its own motion, without waiting for the parties, to stop all further proceedings, and dismiss the suit the moment anything of the kind appeared."

Now, it will be noticed that the fifth section of the act of 1875 makes

no distinction in this careful guardianship of the jurisdiction, between those suits which "do not really and substantially involve a dispute or controversy properly within the jurisdiction of said circuit court" and those in which "the parties to said suits have been improperly or collusively made or joined, either as plaintiffs or defendants," and commands the courts in either class to reject the jurisdiction in precisely the same terms. And so, on the authority of the act as interpreted in the two cases just mentioned, which involved the turpitude of collusive assignments, the circuit court, in *Hartog* v. *Memory,* 23 Fed. Rep. 835, in a case which involved no turpitude, but was a mistake, made "in good faith," as to the citizenship of the defendant, very naturally supposed that the rule of pleading as to the jurisdiction had been changed by the act of 1875, as the supreme court had said it was, and that it imposed the duty on the court, "without waiting for the parties," and "on its own motion," of dismissing the case if the facts developed a want of jurisdiction, as was directed in the extracts already made from the decisions of the supreme court, and it so ruled. But it seems that this was error, and the ruling was reversed. *Hartog* v. *Memory,* 116 U. S. 588, 6 Sup. Ct. Rep. 521. From this latest case, as far as the court is advised, and from *Barry* v. *Edmunds,* 116 U. S. 550, 6 Sup. Ct. Rep. 501, which also considered and construed this section of the act of 1875, it *now* seems that "the old rule established by the decisions" has not been changed, but is still established, notwithstanding the act; and a new rule has been super-added, which is that the court may of its own motion institute an inquiry, "either by having the proper issue joined and tried, or by some other appropriate form of proceeding" as to jurisdiction, and act accordingly. The statute says that the court shall dismiss the suit when it shall appear to the satisfaction of the court that the jurisdiction does not exist, and, of course, if this be mandatory, it is the duty of the court always to institute the inquiry above mentioned. Nevertheless, by this latest decision, it cannot do this without directing a proper issue to be made, which is still a plea in abatement to the jurisdiction as before, unless there be some other "appropriate form of proceeding" available; and I take it there is none other in actions at law. The result is that the defense set up here cannot be made under the general issue, as it may have been done under the state practice in Ohio, but should have been raised by a plea in abatement, either generally or specially traversing the capacity of the plaintiff to sue, as was so learnedly pointed out by Mr. Justice CURTIS in the *Dred Scott Case, supra;* and it is worthy of remark that this case, in the matter of pleading, as here considered, presents a very striking analogy to that case as analyzed by Mr. Justice CURTIS. In that case the question was whether Dred Scott, a natural person, was a "citizen," he being of African descent; and here it is whether the plaintiff is a corporation, and therefore *pro hac* a "citizen," it having been organized as a limited partnership. If the suit were in the state court of Ohio, and no question of the jurisdiction of a tribunal of limited powers were involved, but only the simple question of

whether the plaintiff be a corporation, that issue, as I understand it to be conceded, might be made under the general denial, and no special plea of *nul tiel* corporation, as it is called, would be required. But here again these federal decisions, and many others that might be cited, all show that the federal practice, like that in many other of the states than Ohio, requires that special plea. If it were not for this fact it might be doubtful, and it may be that it is doubtful notwithstanding that fact, whether this case falls within the rulings of *Williams* v. *Nottawa, supra,* and *Farmington* v. *Pillsbury, supra,* in neither of which was there any plea in abatement to the jurisdiction, and yet the evidence that overthrew the jurisdiction was held pertinent under the issues that were made upon the merits, or within the case of *Hartog* v. *Memory, supra,* where the plea in abatement was required. But my best judgment is that it falls within the latter case, and must be controlled by it, and that the evidence which relates to the incorporation of the plaintiff should be held to be incompetent and irrelevant, as the pleadings now stand. But I am certainly of the opinion that the court should of its own motion obey the imperative command of the act of 1875, and perform the duty imposed upon it by the act and the decisions under it, by directing an issue to be made to test the question of jurisdiction, and should, for that reason, and because the federal statute of jeofails is the most liberal as to amendments of pleadings of all kinds and at all stages of the case, allow the defendants' application to amend their pleadings, and it will be granted. But here we are again confronted with the difficulty that these decisions establish beyond peradventure that this special plea to the jurisdiction cannot be jointly pleaded with other issues to the merits, the latter overruling and waiving the former, and this amended plea should be therefore tried and disposed of separately; but, exercising the plenary powers of the court over this subject under the act of 1875, I think it is competent for us to avoid the abortion that must result from withdrawing the pleas to the merits and discarding all the proof that pertains to them, and forcing us into two trials, by directing this jury to find a special verdict setting out the facts, none of which are disputed, relating to the organization and alleged incorporation of the plaintiff; and on this special finding the court can direct judgment, and dismiss the suit, if it shall turn out that the plaintiff is not an incorporation under the laws of Pennsylvania, as it sets itself up to be by the declaration or petition; and it will be so ordered. But I suggest to counsel for the defendant that, while it is true that he may by a general traverse, such as he has drawn for his amendment, make the issue of the jurisdiction, it would be better to follow Mr. Justice CURTIS' suggestion in the *Dred Scott Case,* and raise it by a special traverse setting out the facts in proof as to the plaintiff's organization; and a demurrer to that would present the precise question that would be presented by the special findings of the jury. But he can take his choice of procedure, as he is clearly entitled to plead in his own way.

But now comes the plaintiff and asks to amend its declaration, if the judgment of the court upon the demurrer or upon the special findings

shall be that it is not a corporation of Pennsylvania, and is not entitled to sue as "a citizen" of that state, by suing in the names of the persons who constitute the organization, some half dozen citizens of New York, New Jersey, and Pennsylvania, as the proof shows them to be, and under the firm name and style of the organization, after the usual manner of partners bringing suits. Surely they would be entitled to this amendment, and it would rid us of all further trouble as to the jurisdiction. The court is therefore willing to rule *pro forma*—and I say that because, while I believe it to be the correct ruling, I have not had time or opportunity to give that critical study to the point which its importance deserves—that the plaintiff, on the facts shown, is not a corporation of Pennsylvania, and therefore is not entitled to sue as such in respect to the rule of the federal courts governing their jurisdiction of controversies between citizens of different states. The case of *Insurance Co.* v. *Massachusetts*, 10 Wall. 566, does not decide the point, as already intimated. A joint-stock company or other organization similar to partnerships, whether limited or general, may be for the purposes of taxation, as in that case declared to be, and for the reasons therein stated, within a legislative act taxing "corporations," *eo nomine*, and yet not within the designation of the term "citizen," as used in the constitution of the United States defining the limited judicial powers of the federal government. *Dinsmore* v. *Railroad Co.*, 1 Law & Eq. Rep. 351; S. C. **3** Chi. Leg. N. 157. One has only to reflect a moment upon the well-known and interesting conflict, political and judicial, which has raged over the ruling of the supreme court that a corporation may, by a fiction, be brought within the designation of the constitutional term "citizen of a state," to see that the courts may well halt before extending any further, as our constitution now stands, the business of creating artificial citizens of the states by taking within the fiction already established any other than legitimate corporations *de jure*, and thus acquiring jurisdiction over partnerships or associations that are called *quasi* corporations and corporations *de facto*, merely to obtain this jurisdiction; and I cannot, as now advised, assent to the circuit rulings in that direction, which have been cited at the bar. *Maltz* v. *Express Co.*, 1 Flip. 611; *Fargo* v. *Railroad Co.*, 6 Fed. Rep. 787. If the jurisdiction is to be maintained it is not by the assimilation of these nondescript organizations into corporations, for the constitution does not use that term, but by an expansion of the power of the court and the selection of a similar material out of which to manufacture other artificial "citizens" of a similar or analogous character to those already admitted to this privilege of the constitution. Or, to be more precise,—for it is admitted on all hands that this creation of an artificial "citizen" is the product of a somewhat dubious process,—we are to extend the absolutely conclusive legal presumption in favor of corporations that all the incorporators are citizens of the state granting the charter, to organizations which have no charter, strictly speaking, but by authority of statute exercise an analogous privilege of suing and being sued by a common name or style, instead of in their individual personalities. That

the same reason may be given for extending the presumption as is given for its original establishment there can be no doubt, but whether its extension may not provide a too easy method of evading the constitution deserves careful consideration at our hands.   By the same reason we might include in the presumption associations of persons exercising the privilege by a contract *inter sese*, without authority of statute in the premises, if *sub silentio* the state permitted them to do that thing, and so on *ad infinitum*.   The plea of the defendants to the jurisdiction will be, therefore, sustained upon the findings of the jury in that behalf, or upon a demurrer to a plea setting up the facts specifically as suggested, whichever is adopted.   And counsel may make up the record accordingly. But the plaintiff's amendment, suing in the names of the individuals composing the limited partnership, in the firm name and style, as partners ordinarily sue, will then be allowed, but only in that form; for we do not wish to fall in with the controversy whether a statute authorizing a partnership to sue by its firm name, and not by its individual members, has any extraterritorial force through the comity of states.   This mode of suing would not disclose the facts as to their citizenship, and would practically be only to confer on them the privilege of a corporation suing as citizens of another state in the federal courts.   The petition being thus amended, the case will proceed upon the other issues involved to verdict and final judgment.

NOTE.   The declaration, as amended, became that of A, B, C, etc., citizens of New York, New Jersey, and Pennsylvania, respectively, "doing business under the firm name and style of the Imperial Refining Company."