## EATON *v.* CALHOUN.

### (*Circuit Court, W. D. Tennessee.* February 25, 1880.)

1. SUBJECT-MATTER—EJECTMENT—JURISDICTION—DIRECT TAX—ACT JUNE 7, 1862
   —INTERNAL REVENUE—REV. ST. § 629, SUBSEC. 4.
   Whether the circuit court of the United States can acquire jurisdiction of an action of ejectment between citizens of the same state under the act of March 3, 1883, (4 St. at Large, 632; Rev. St. § 629, subsec. 4,) where the land in controversy is claimed by the plaintiff through a sale under the act of congress of June 7, 1862, (12 St. at Large, 422,) for the sale of lands subject to the direct tax within the insurrectionary districts of the United States, it being doubtful if such a suit is one arising under "any law providing internal revenue;" or if, when the plaintiff is a remote purchaser, and the controversy is not with a revenue officer, the suit can be said to be within that act of congress as amended by the Revised Statutes, *quære.*

2. SAME—PRACTICE—JURISDICTION ON THE PROOF.
   Where jurisdiction depends on the subject-matter of the suit, the court may, if necessary, irrespective of the pleadings, retain the case until a trial of the facts before the jury or the court, and then, on the proof, determine the question of jurisdiction.

Ejectment.

This is an action of ejectment for a lot of land claimed by the plaintiff under the direct-tax sales of lands within the insurrectionary districts of the United States, held under authority of the act of June 7, 1862, (12 St. at Large, 422,) he holding a deed from the commissioner of internal revenue, approved by the secretary of the treasury in pursuance of an act of congress of June 8, 1872, (12 St. at Large, 330.)

The plaintiff and defendant are citizens of Tennessee, but the declaration avers "that the plaintiff claims title under the aforesaid acts

of congress of June 7, 1862, and June 8, 1872, and that plaintiff's claim of title under the said acts of congress is the only question in controversy between the plaintiff and the defendant, and plaintiff avers that this is a case arising under the aforesaid acts of congress, and the acts amendatory thereof." To this declaration there was a demurrer for want of jurisdiction, and subsequently a plea setting up the citizenship of the parties and denying the jurisdiction of the court.

*L. B. Eaton,* for plaintiff.

*J. M. Gregory,* for defendant.

HAMMOND, J. The case of *Peyton* v. *Bliss,* 1 Woolw. 170, relied on by the plaintiff to support the jurisdiction, was one of removal from the state court under the *third* section of the act of March 3, 1833, (4 St. at Large, 632,) and not of original jurisdiction under the *second* section. Suits may sometimes be removed to, which cannot be originally brought in, the federal court. *Barney* v. *Globe Bank,* 5 Blatchf. 107. If the plaintiff here had been in possession of the land, and been sued by the defendant in the state court, the case of *Peyton* v. *Bliss, supra,* would, perhaps, apply, though the question whether it was a proper case to remove under the act of 1833 does not seem to have been directly made, as it was contended that the act of 1833 had been repealed. It seems not to have been denied that if the act of 1833 were in force, the case was properly removed, and it was held that it was in force as to the direct-tax act. The very next case, however, (*Peay* v. *Schenck,* 1 Woolw. 175,) by the same judge, was one of original jurisdiction, in which a cross-bill was filed by a defendant, who was a citizen of the same state as his co-defendant, against such co-defendant and the plaintiff, to litigate precisely the same questions as in *Peyton* v. *Bliss, supra,* namely, the validity of sales under the direct-tax act, and it does not seem to have occurred to the court or counsel to support the jurisdiction under the second section of the act of 1833 as one arising under the revenue laws, and the jurisdiction was only retained because the cross-bill was ancillary to the original suit between citizens of different states; and this case is as much against the jurisdiction as the other is in favor of it.

Whether the direct-tax law belongs to the system of excise taxes known as the "Internal-Revenue Laws" or not, (and I do not think it does,) it certainly is a law providing internal revenue, and comes within the very words of section 629 of the Revised Statutes, where the change of phraseology will be noticed; and this section is the law which must govern us. The act of 1833, and subsequent acts affect-

ing it, are carried into the Revision as sections 629, subsec. 4, 643, 645, 646, 751, 752, 753, 934, 3176, 3465, 5446, 5537, and 5538, and it is by these provisions that we must determine the questions now presented for judgment, and not by the act of 1833, which is the only statute cited by counsel.

The different kinds of revenue are stated in *Warren* v. *Fowler,* 4 Blatchf. 311, where it is held that the postal laws were revenue laws under the act of 1833, and I have no doubt the ruling of Mr. Justice MILLER was correct, that the statute repealing the act of 1833 as to the internal-revenue laws, (Rev. St. § 3465,) does not apply to the direct-tax act.

But the question remains whether this suit arises under "any law providing internal revenue," in the sense in which that expression is used in the Revised Statutes, § 629, subsec. 4, to confer jurisdiction. The plaintiff here contends that he is claiming title under a deed made to him by the United States in pursuance of the act of June 8, 1872, (17 St. at Large 330,) the fourth section of which provides that at the expiration of the time allowed by law for redemption, all lands owned by the United States shall be sold at auction. The plaintiff purchased the lot in question at such a sale, and the proper officers of the government have made him a deed conveying the title of the United States, and this is an action of ejectment to recover the land from one in possession, the averment of the declaration being that the defendant denies the validity of the plaintiff's claim of title under the sale for taxes and under the aforesaid acts of congress. The demurrer admits this averment. Is it, then, a case arising under a revenue law? The general intention of the acts seems to have been, manifestly, to protect the revenue officers and agents against suits in the state courts. *Philadelphia* v. *Collector,* 5 Wall. 720; *Hunthall* v. *Collector,* 9 Wall. 565; *Van Zant* v. *Maxwell,* 2 Blatchf. 421; *Benchly* v. *Gilbert,* 8 Blatchf. 147.

The language of section 629, subsec. 4, seems broad enough to cover any case, however remotely connected with the revenue laws; but section 643 seems to indicate the classes of cases thought to come within the designation of cases arising under the revenue laws. In treating of suits about property this section appears to contemplate property held by revenue officers or their agents under seizure, and does not seem to embrace suits arising after the property seized has been sold and passed out of the control of revenue officers or agents. In such cases it would appear that the revenue laws had become *functus officio,* and the suit so brought would stand like any other where

property had been sold by judicial or other legal proceedings. Judge MILLER says, in *Carpenter* v. *Williams*, 9 Wall. 785, that if every case where the title has passed through the United States is to carry with it the right to come into the federal courts, they would absorb jurisdiction of all the land suits. So here, if, because a parcel of realty has been once sold for taxes by the United States all questions thereafter arising in actions of ejectment may be brought here on the theory that the tax sale is a link in the chain of title, the validity of which may be or is questioned, it would bring to this court almost every suit after a sale had once taken place.

Here the title is derived directly from the United States, which became the owner by the execution of its revenue laws. The act of June 8, 1872, is an act for the sale of lands belonging to the United States, and it is under *that act* the plaintiff claims title, and not under any revenue officer *as such*. It is true, the commissioner of internal revenue and the secretary of the treasury are, in one sense, revenue officers; but, acting under this statute of 1872, they are merely agents of the government to sell lands. The direct-tax act was satisfied by the tax sale to the United States. After a purchase or forfeiture the ownership of the government stood like its ownership of other lands. · Bankruptcy, patents, judicial sales, and many other subjects of federal power would furnish sources of title to property, and on the same principle, after property had passed by operation of a federal law, jurisdiction over it would continue in every case where the title was involved, if the act of congress were called in question. It may involve a federal question under the twenty-fifth section of the judiciary act, (Rev. St. § 709,) which may be re-examined by the supreme court; but because that question arises on the revenue laws does it give this court original jurisdiction?

I have, so far as I could, examined the cases arising under these laws, and have found none where private citizens, wholly disconnected with the execution of the revenue laws, have litigated their private suits on the theory of this suit, except the case of *Peyton* v. *Bliss, supra;* they are all actions against revenue officers or their agents. *Ex parte Smith*, 94 U. S. 455, only decides that the declaration did not aver jurisdiction.

On this subject, an examination of the cases under this and other statutes, where the jurisdiction depends upon subject-matter, will disclose that the practice of the courts is to retain the case until a trial of the facts before the jury or by the court, and on the proof determine the question of jurisdiction without reference to the merely general

averment of the pleadings, if necessary to do so. *Mayor* v. *Cooper*, 6 Wall. 247; *Dennistoun* v. *Draper*, 5 Blatchf. 336; *Murray* v. *Patrie*, Id. 343; *Fiske* v. *Railroad Co.* Id. 362; and many other cases.

I do not doubt that the judicial power of the United States may be extended by congress to all cases involving a federal question, even to the extent of giving their courts original jurisdiction. But heretofore, and until the act of March 3, 1875, except in a few instances, such questions have been left to a final appeal to the supreme court from the state courts. One of these exceptions embraces cases arising under the revenue laws; but I doubt if this is such a suit. All the authorities I have examined were actions directly or indirectly against officers, or substantially against the United States, and concern the revenue. But the case at bar seems to me too remotely connected with the revenue laws to be called a revenue case. It is simply a private suit about property once having passed through the process of sale under a revenue law, and the title may depend on that law; but *quære* whether it is thereby made a case arising under it.

I am unable to reach a satisfactory conclusion, particularly in view of the permanent appropriation to repay to purchasers on eviction the taxes paid, which may continue these cases, in any view, under the protection of the statute. Rev. St. 3689. And, though my impressions are against the jurisdiction, I shall direct a reargument before a full bench, and withhold for the present any judgment.

---

(March 5, 1880.)

Reargued before BAXTER and HAMMOND, JJ., and taken under advisement. Jurisdiction now claimed under the act of March 3, 1875, (18 St. at Large, 470.)

---

(April, 1880.)

Opinion of BAXTER, C. J., sustaining jurisdiction under act of March 3, 1875, (18 St. at Large, 470,) reported. *Eaton* v. *Calhoun*, 2 Flippin, 593.

---

*Vide Springer* v. *U. S.* 102 U. S. 586, where it was decided that the taxes levied by the internal-revenue acts are not direct taxes under the constitution.