## W. L. WELLS CO. v. AVON MILLS.

### SAME v. GASTONIA COTTON MFG. CO.

(Circuit Court, W. D. North Carolina. June Term, 1902.)

1. CORPORATIONS—LEGALITY OF ORGANIZATION—ESTOPPEL TO DENY.

  Certain persons obtained a charter from the state of Mississippi for a trading corporation, which was authorized to commence business when a stated amount of its capital stock had been paid in. They organized the corporation and commenced business in the corporate name, although the required amount of capital stock was not paid in until later. *Held,* that a customer to whom the corporation sold goods thereafter could not question the legal existence of the corporation for the purpose of defeating its right to maintain an action in a federal court, as a citizen of Mississippi, to recover the price of such goods.

2. SAME—AUTHORITY OF OFFICERS AS AGENTS—SUBSCRIPTION TO STOCK IN OTHER COMPANIES.

  The managing officer of a corporation organized for the purpose of trading in cotton has no power to bind it by a subscription to the stock

¶ 1. See Corporations, vol. 12, Cent. Dig. § 84.

of another corporation, and a debtor of the trading company who pleads a payment made on such a subscription by authority of its president and manager as a payment on his debt has the burden of proof to show that the subscription was authorized by the company, or that the payment was known to and ratified by it.

The plaintiff in the two cases above brings suit as a corporation against the defendants to recover about the sum of $70,000, principal and interest, claimed to be due for cotton sold and delivered to the defendants. The plaintiff's residence and place of business is in the city of Vicksburg, Miss., and the defendants are both corporations under the laws of North Carolina, and are engaged in the manufacture of cotton at Gastonia, in said state. The affairs of both defendants are under the same management, and John F. Love is secretary and treasurer of both companies. During the years 1899, 1900, and 1901 the plaintiff sold and delivered to the defendants cotton for use in defendants' mills, and these two suits were brought to recover the amount claimed by plaintiff as the purchase price thereof. The cases were tried at Charlotte, at May term, 1902, of the circuit court, and verdict and judgment rendered for plaintiff. Facts sufficient for an understanding of the legal points involved are stated in the opinion.

Jones & Tillett and Murray F. Smith, for plaintiff.
Burwell, Walker & Cansler and Chas. Price, for defendants.

BOYD, District Judge (after stating the facts as above). There are two cases pending for trial,—the one the W. L. Wells Company against the Avon Mills, and the other the same plaintiff against the Gastonia Cotton Manufacturing Company. The matters involved are substantially the same in both cases, and by consent of all parties the two cases are consolidated for trial. The fact is undisputed that the defendants dealt with the plaintiff as a corporation under its corporate name, and bought cotton, which was delivered to defendants by plaintiff at an agreed price, and that the amount claimed by plaintiff for the purchase of the cotton is correct. The defendants then set up two defenses against plaintiff's recovery,—the first as to the jurisdiction of the court, and the second an alleged payment of $50,000 on plaintiff's debt. In the first place, the defendants deny that the plaintiff is a corporation under the laws of the state of Mississippi, and is therefore not a citizen of said state, and cannot maintain its action in this court. This defense is based upon the allegation that plaintiff was not duly organized under its charter, and was not in fact a corporation at the time of its dealings with defendants and at the bringing of the suits; and it is contended by defendants that, if this be true, the plaintiff did not have a legal existence as a corporation in the state of Mississippi, was not a citizen of said state, and consequently there was no diverse citizenship, and this court has no jurisdiction of the cause of action. The evidence upon this point is uncontradicted, and consists of a charter, duly issued under the laws of the state of Mississippi, creating a corporation to be called the W. L. Wells Company, in which W. L. Wells, John T. Wells, and George Butterworth are named as cor-

porators, authorizing the organization of said corporation with a
capital stock of $50,000; the purpose of the corporation being to
deal in cotton; to begin business as such dealer when the sum of
$10,000 of the capital stock was paid in.   Under the authority of this
act of incorporation the corporators met, organized, and elected W.
L. Wells president of the company, and one of the other corporators
as secretary and treasurer.   Thereupon a charter or certificate of in-
corporation was duly issued to the said company by the proper au-
thorities of Mississippi, and the company commenced business.   The
$10,000 of capital stock was not paid in at first, but the undisputed
testimony is that the net profits of the company for the first year of
its business were $37,000, and from this amount the required $10,-
000 of capital stock was paid in.   The dealings of defendants with
the plaintiff commenced soon after the corporation was organized,
but the account between them for the first year has all been set-
tled up, and the account upon which this controversy arises is based
on transactions subsequent to the first year of plaintiff's existence as
a corporation, and after the $10,000 of capital stock had been paid
in, so that plaintiffs had not only organized as a corporation under
the provisions of law, but, according to the evidence, the $10,000 of
capital stock had been paid, anterior to the time the cause of action
in this case arose.   All of the transactions which the defendants had
with the plaintiff were in its corporate capacity as the W. L. Wells
Company.   Every letter of plaintiff to defendants (and there are a
great many of them) concerning the sale and delivery of the cotton
for which plaintiff sues is upon paper headed, "The W. L. Wells
Company, Incorporated," and the defendants, in answer to these let-
ters, and in making orders for cotton to be shipped to the mills, in
every instance addressed "The W. L. Wells Company."   The bills
of lading for cotton shipped defendants were made out in the name
of the W. L. Wells Company, and the checks sent by defendants in
making payments were all payable to the said company.

The first question (and that is the question which affects the ju-
risdiction) is this:   Is the W. L. Wells Company a corporation of
the state of Mississippi, and thus entitled to maintain its action
against the defendants, who are citizens of North Carolina, in the
circuit court of the United States?   It is the opinion of the court
that the evidence is conclusive upon this point.   It is true that at the
time the corporators perfected the organization of the corporation
the $10,000 of capital stock required to be paid before the corporation
could engage in business was not paid, but, although this be true,
when the company was organized and its officers elected under the
provisions of the act of the legislature the company assumed a legal
existence.   The persons named in the charter had exercised the
franchise of the corporators; that is, the right to organize and exist
as a legal entity.   There yet remained to the company the right to
exercise the franchise of the corporation, which was the right to buy
and sell cotton in pursuance of the purposes for which the corporation
had been created.   In this charter, as in many others, there are two
separate and distinct franchises.   The one is the franchise of the
corporators named in the act, which is the power conferred upon them

to organize and become a body politic. The other is the franchise of the corporation; that is, the right of the corporation, when it has been organized, to proceed to business. The body becomes a corporation when the individual corporators have exercised the first right (that is, to organize under the provisions of the charter); and when this is done, in the opinion of the court, the corporation has a legal existence, such as to render it capable of suing and being sued. If, however, this doctrine is not sound, it is a fact that, before the transactions which are the ground of this claim were begun with the defendants in this case, the corporation known as the W. L. Wells Company had not only organized under the provisions of the law, but had actually paid in the $10,000 of capital stock which authorized it to proceed to do business, for the testimony of John T. Wells is undisputed, either by facts or circumstances, that the $10,000 of capital stock was paid in from the first year's profits. Further than this, even if the requirements of the charter have not been complied with to the extent necessary to constitute a corporation under the laws of Mississippi, yet it is an uncontroverted fact that W. L. Wells, John T. Wells, and George Butterworth are all citizens and residents of the state of Mississippi, were so at the time of the dealings with defendants and at the time of the bringing of this suit, and still are citizens of said state, and defendants are citizens of North Carolina. Can it be, therefore, that, upon a mere technical question of corporation or no corporation, these parties, who have bought and delivered cotton to the defendants, upon defendants' order, at prices which are not disputed by the defendants, are to have their suit dismissed from court, and be ousted of their remedy to recover from defendants a debt, part of which, at least, is admitted now to be due? The court cannot coincide with this view, but, on the other hand, is of the opinion that plaintiff is a corporation, and is entitled to maintain its action, and the jury is instructed to find the issue as to jurisdiction in favor of the plaintiff. On this point the court does not deem it necessary to discuss the question that plaintiff was exercising corporate franchises with the knowledge and consent of the state of Mississippi. Irrigation Dist. v. Shepard, 185 U. S. 1, 22 Sup. Ct. 531, 46 L. Ed. 773.

The defendants next allege a payment of $50,000 upon plaintiff's claim; the basis of payment being money paid by John F. Love, as secretary and treasurer of the two defendants, to a corporation known as the Loray Mills, for stock to that amount in the said corporation. The evidence to support this payment is, substantially, that W. L. Wells agreed to take $50,000 of stock in the Loray Company, as shown by a letter written by him to John F. Love on October 4, 1900. In this letter Wells stated that he had arranged to take $50,-000 of the Loray stock, but asked to let it come in on the last payments. In the same letter Wells wrote Love, in substance, to keep the Loray subscription a secret from his (Wells') associates, and to mark letters to him concerning it "personal." This injunction was observed by Love, according to the testimony. W. L. Wells and Love had had some conversation about the former taking stock in this company before, but nothing definite had been said until this letter was written. Love at one time (so he testified) had taken $10,-

118 F.—13

000 of money due the W. L. Wells Company for cotton, and applied it as a payment upon the Loray stock, and at another time took $40,-000 of money due the W. L. Wells Company for cotton, and applied it in the same way; but there was no evidence whatever that these alleged applications of money were made by authority or consent of the W. L. Wells Company, or that the said company ever ratified said payments. Neither was there any evidence that W. L. Wells was authorized by the company to subscribe for stock in the Loray Company when he agreed to take the stock, or that the company at any time ratified any subscription for stock in the Loray Company made by said W. L. Wells. Love did not give notice to the company that he had taken any money due it and applied it for payment for stock in the Loray Mills, and it was not until the W. L. Wells Company had called upon the defendants for a settlement of the amount due for cotton, and for which this suit is brought, that Love, as agent for the defendants, or in any other manner, made known to the W. L. Wells Company that the alleged payment of $50,000 was claimed.

In the last defense set up by the defendants (that is, the alleged payment of $50,000 claimed as a credit upon plaintiff's debt), three principles of law are involved: First. That defendants, having dealt with plaintiffs as a corporation, are estopped to deny its corporate existence in order to prevent a recovery for the price of cotton sold and delivered. This principle is so well settled that no citation of authority in support seems to be necessary, but attention is called to Chubb v. Upton, 95 U. S. 665, 24 L. Ed. 523, and Baltimore & P. R. Co. v. Fifth Baptist Church, 137 U. S. 568, 11 Sup. Ct. 185, 34 L. Ed. 784. Second. W. L. Wells, being the agent of the plaintiff corporation for the purpose of carrying on its business as a dealer in cotton, was not authorized to subscribe for stock in an incorporated company for his principal, and the principal would not be bound by any contract the said agent would make in this behalf, unless express authority is shown, or there is evidence that such contract was afterwards ratified by the principal; nor was it within the scope of the agent's authority to direct the application of money due his principal in payment for stock in the Loray Company, and if defendants thus applied money due plaintiff, without the consent of the plaintiff, it was unauthorized, and such application cannot avail defendants against plaintiff's recovery in this action, unless the defendants introduce testimony which satisfies the jury that the plaintiff afterwards ratified the transaction. As before stated, the negotiations in regard to the subscription for stock in the Loray Company were had between W. L. Wells and Love. There is no evidence that these negotiations were ever brought to the knowledge of the plaintiff, or to John T. Wells and George Butterworth, the other incorporators; nor is it shown that the plaintiff in its corporate capacity, or that the associates of W. L. Wells, had any knowledge whatever of the application of money due for cotton in payment for stock in the Loray Company; nor is there any evidence that the plaintiff corporation or W. L. Wells' associates by any subsequent act ratified the subscription for stock or the application of funds in payment therefor. Schutz v. Jordan, 141 U. S. 213, 11 Sup. Ct. 906, 35 L. Ed. 705; Owings v. Hull, 9 Pet. 627, 9 L. Ed.

246; Baldwin v. Burrows, 47 N. Y. 211; Starr & Co. v. Galgate Ship Co., 15 C. C. A. 366, 68 Fed. 243. From the evidence in this case the conclusion is irresistible that the defendants were put upon notice that the contract which they allege for the Loray stock was a contract for the benefit of W. L. Wells individually, and, being thus put upon notice of this fact, they were bound to inquire into the authority of W. L. Wells, no matter how general his powers might have been, as it is a rule of universal application that no agent, however general his authority, can apply his principal's property to the payment of his individual debts without the special authority of his principal; and it is a further rule of law that he who assumes to rely upon the authority of an agent to bind his principal to the discharge of his own obligations must prove actual authority if a contention arises. Chrystie v. Foster, 9 C. C. A. 606, 61 Fed. 551; Park Hotel Co. v. Fourth Nat. Bank, 30 C. C. A. 409, 86 Fed. 742. Third. The defendants having admitted the purchase of the cotton, and its delivery at an agreed price, the burden is then upon them to prove by a preponderance of testimony a payment which is alleged by them and denied by the plaintiff. Upon consideration of all of the testimony in this case, the court is of the opinion that there is no evidence reasonably sufficient to go to the jury to sustain defendants' alleged payment. Wells was not authorized to subscribe for stock for the plaintiff in the Loray Mills or any other corporation; nor was the money paid by Love for the stock applied with the knowledge or assent of the plaintiff, or such application afterward ratified by it. W. L. Wells had no power to bind his company upon any such contract, either as to the subscription for the stock, or as to the payment of the money from the amount due for cotton. At the time the money of the plaintiff was taken by Love, and applied, as he states, in payment for stock in the Loray corporation, the said corporation had not been organized, nor was it organized for months afterwards; and when the organization took place no representative of the plaintiff company was present, and there is no evidence that the plaintiff had notice of the meeting at which the organization was perfected. Indeed, the evidence shows that W. L. Wells himself had no notice of the meeting at which the organization was effected, and was not present either in person or by proxy. In the meantime the capital stock of the Loray Company, which was $1,000,000, was changed, and instead of $1,000,000 of stock, all of the same character, $700,000 of preferred stock was issued to certain stockholders, and $300,000 of common stock remained, and of this $300,000 of common stock it was proposed to issue $50,000 to the W. L. Wells Company as a payment on its debt for cotton. In other words, after $700,000 of stock in the Loray Mills had been preferred and given priority in lien upon the property and for the dividends of the company, the proposition was to issue $50,000 of the common stock, which, so far as the evidence shows, was without market value, as a credit upon a valid debt due to the W. L. Wells Company for cotton which had been sold and delivered to the defendants, and had been consumed by them in their operations.

The jury is therefore instructed to find the other issues submitted to them in favor of the plaintiff.