## STATE OF VIRGINIA v. FELTS.

### (Circuit Court, W. D. Virginia. September 1, 1904.)

1. REMOVAL OF CAUSES—PROSECUTION OF UNITED STATES OFFICER—PROCEDURE.

   A petition for the removal of a criminal prosecution commenced in a state court against a revenue officer of the United States, under Rev. St. § 643 [U. S. Comp. St. 1901, p. 521], need not be filed until after the indictment of the defendant, where an indictment is required by the state law, until which time the prosecution has not been "commenced" within the meaning of the statute. Such petition need not contain allegations of local prejudice.

2. SAME—TIME AND PLACE OF FILING PETITION.

   Rev. St. § 643 [U. S. Comp. St. 1901, p. 521], which authorizes a revenue officer against whom a prosecution has been commenced in a state court on account of an act done under color of his office to remove the cause, "at any time before the trial thereof," into the "Circuit Court next to be holden in the district," does not require the petition for removal to be filed at the place where the next session of the Circuit Court is to be held after indictment, where there are several places of holding court in the district, but it may be filed, at any time before trial, at the place where the next term thereafter is to be held. And such requirement is directory only, and the filing of the petition in the clerk's office at a different place is not ground for remanding the cause to the state court.

3. SAME—WRIT TO BE ISSUED.

   Where the prosecution in such case has been commenced by capias or other process of arrest, the federal court, on the filing of the petition for removal, issues a writ of habeas corpus cum causa, which, in case the defendant has given bail, may be addressed to the marshal, a duplicate to be served upon the clerk of the state court. It is the duty of the petitioner, and not of the state, to procure the indictment and proceedings of the state court; and where the clerk has been tendered his proper fees therefor, and fails or refuses to furnish a certified copy of the record, a writ of certiorari should issue from the federal court, or the record may be supplied by affidavit, as provided in Rev. St. § 645 [U. S. Comp. St. 1901, p. 523], which course may also be taken when the petitioner is unable to pay the clerk's fees.

4. SAME—JURISDICTION—RAISING AND TRIAL OF ISSUE.

   A petition for removal sufficient on its face gives the federal court jurisdiction only prima facie to try the case on its merits, and the truth of its essential allegations may be put in issue by any appropriate plead-

ing, the filing of a plea to the jurisdiction being the better practice. The issue should be tried by the jury, subject to the right of the court to direct a verdict thereon when proper, and the burden of proof on the issue rests on the petitioner.

5. SAME—TRIAL OF DEFENDANT IN FEDERAL COURT.

On the trial of a defendant in a criminal prosecution who has removed the case into the federal court under Rev. St. § 643 [U. S. Comp. St. 1901, p. 521], no procedure is prescribed by the statute; but the offense charged being against the state law, and prosecuted by the state, the state practice should be followed in substantive matters, at least in felony cases, such as in the impaneling and charging of the jury, the number of challenges allowed, in determining the competency of witnesses, and in confining the jurors during the trial, where that is required by the law of the state.

6. SAME—FAILURE OF STATE TO PROSECUTE.

Where the state fails or refuses to prosecute in such a cause after its removal, the proper course is for the court to impanel a jury and direct a verdict of not guilty.

7. SAME—WITNESS FEES.

The court having no power to order the payment of witness fees, except in cases to which the United States is a party, special authority to the marshal to pay the fees of defendant's witnesses must be asked from the department of justice, if the defendant's witnesses are to be paid by the government.

8. SAME—EXECUTION OF SENTENCE.

Where a defendant in a criminal prosecution removed into the federal court under Rev. St. § 643 [U. S. Comp. St. 1901, p. 521], is convicted and sentenced in that court in accordance with the state law, either to be executed or imprisoned, he should be delivered to the proper officer of the state for the execution of the sentence; if a fine is imposed, which is paid, it should be transmitted to the clerk of the court from which the cause was removed.

Wm. A. Anderson, Atty. Gen., H. M. Heuser, Commonwealth's Atty., and R. Lee Trinkle, for the State.

Thos. L. Moore, U. S. Atty., J. C. Blair, Asst. U. S. Atty., A. A. Campbell, W. S. Poage, H. M. Ford, and Lee & Howard, for defendant.

McDOWELL, District Judge.   T. L. Felts, having been indicted in the county court of Wythe county, Va., on a charge of murdering one Vaughn, and wounding with intent to kill one Alford, a petition for removal under section 643, Rev. St. U. S. [U. S. Comp. St. 1901, p. 521], was filed in the office of the clerk of the United States Circuit Court at Lynchburg, Va., on May 28, 1901.   The petition, which was duly verified and certified by counsel, sets forth, in so far as is now material, that the petitioner was at the time of the occurrence a deputy United States marshal; that being in the town of Wytheville, Va., on official duty, he learned that two persons for whom he had warrants charging offenses against federal revenue statutes could probably be found at the town of Max Meadows; he thereupon boarded a train at Wytheville, which would take him to Max Meadows, for the purpose of attempting to arrest the persons for whom he had the warrants; that he found on the train the aforesaid Vaughn and Alford, who, on account of the previous acts of the said Felts in connection with his duties as deputy marshal, had conspired to murder the said petitioner; that while on the train he was viciously attacked by the said persons, and in defending himself against the said assault he found it necessary

to shoot and kill the said Vaughn and to wound the said Alford. It is further stated "that, in consequence of said assault and interference on the part of said Vaughn and Alford, he was hindered and prevented from discharging his duty as said officer, as required by the process aforesaid."

At the last term of the court at Lynchburg a motion to remand to the state court was made, based on the fact that the petition should have been filed in the office of the clerk of this court at Harrisonburg, where a term of court was held in June, 1901, and also on the ground that no right of removal is shown by the petition.

It is unnecessary here to discuss the last question, as the opinion in the case of Virginia v. De Hart (C. C.) 119 Fed. 626, shows sufficiently my reason for overruling the motion so far as it is based on this ground. The other question will be discussed briefly hereinafter.

Nothing further was done than to overrule the motion to remand at the last term, and as numerous questions arising under section 643, Rev. St. [U. S. Comp. St. 1901, p. 521], will probably be raised in this case at the approaching term, I have prepared the following opinion touching the practice in such cases, confined mainly to criminal prosecutions for indictable offenses, which, however, is merely tentative. Nothing herein is intended as the expression of an unalterable opinion, as this paper is prepared in advance of argument, and chiefly for the purpose of directing the attention of counsel to some of the nicer questions which will probably arise.

### The Petition.

It is first to be noted that a criminal prosecution has not been "commenced" in a state court until the accused has been indicted. Virginia v. Paul, 148 U. S. 107, 13 Sup. Ct. 536, 37 L. Ed. 386; Georgia v. O'Grady, Fed. Cas. No. 5,352, 3 Woods, 496; Pennsylvania v. Artman, Fed. Cas. No. 10,952, 3 Grant, Cas. 436. It is otherwise where the offense can be tried without an indictment. Com. v. Bingham (C. C.) 88 Fed. 561; Georgia v. Port (C. C.) 3 Fed. 117.

The essentials of the petition are so fully set forth in the statute that nothing need be said in this respect further than that the long and labored allegations of the existence of local prejudice against the petitioner usually found in such petitions are not essential.

In connection with section 643 [U. S. Comp. St. 1901, p. 521] should be read section 645, Rev. St. [U. S. Comp. St. 1901, p. 523], which was a part of Act March 2, 1833, c. 57, § 4 (4 Stat. 634), from which in large measure section 643 was taken. See, also, Act July 13, 1866, c. 184 (14 Stat. 171); Act Feb. 28, 1871, c. 99 (16 Stat. 439); and Act Sept. 24, 1789, c. 20 (1 Stat. 79); Act Feb. 4, 1815, c. 31 (3 Stat. 198).

### At What Court to be Filed.

In this district, as in nearly all others, there are several places at which the Circuit Court holds sessions. The petition must allege that the petitioner has been indicted in the state court; but I do not think the provision that "the prosecution may be removed for trial into the circuit court next to be holden" forbids the filing of the petition in the office of the clerk of the Circuit Court at some other place of session in the district than the one at which a session is to be held next after

the finding of the indictment. It is conceivable that a federal revenue officer, indicted in a state court for an act done under color of his office, may allow several terms of the federal Circuit Court of the district to pass, either in ignorance of his right of removal, or under the belief that he can secure an impartial trial in the state court. If, however, subsequently, and before trial in the state court, he is advised of his right to remove, or comes to believe that local prejudice exists which will bias the state court against him, he should then have the right to file his petition and have the cause removed. Otherwise we do not give full weight to the words of the statute, "at any time before trial," and the purpose of the statute would be to some extent defeated. Again, the term of the Circuit Court "next to be holden" might commence so soon after the finding of the indictment that the preparation of the petition and certificate would be impossible. I think the statute in this respect is merely directory. When the petition and certificate have been prepared, the choice of the several clerks' offices of the federal Circuit Court in which the papers are to be filed is that one at the place where the next session of the Circuit Court is to be held. But a failure to follow this directory provision of the statute would not justify remanding the cause to the state court. In case the petition were filed at a place where no session of the court is to be held for a considerable time, the cause could, on motion, be transferred to a place where a session is to be sooner held or where the court is then in session.

### The Writ to be Issued.

It will be observed that the statute makes no provision, where the prosecution is commenced by a capias or process of arrest, for any other writ than that of habeas corpus cum causa. This writ, where, as is usually the case, the petitioner has given bail and is not in actual custody, is not well adapted to the purpose in view. It is adapted to be addressed to the person who has the petitioner in his custody, and commands such person to bring the body of the petitioner before the court whose clerk issues it, and make known the cause of his caption and detention. A not unusual practice, where the petitioner is not in actual custody, is to address the writ to the marshal of the federal district, and issue a duplicate, which is served on, or left at the office of, the clerk of the state court in which the indictment is pending.

No provision is made for the issue of a writ of certiorari in a case commenced by capias or other process of arrest. As a rule the clerk of the state court, obeying so far as he can the command of the writ of habeas corpus cum causa, sends to the federal court the original bill of indictment (which should be identified by proper certificate of the state court clerk), or certifies a copy thereof, along with a copy of the orders, if any, made by the state court in connection therewith. If, however, the clerk of the state court fails or refuses to do either (and unless his proper fees are paid or tendered him he can, I think, rightfully so refuse), the course to be pursued is set out in section 645, Rev. St. [U. S. Comp. St. 1901, p. 523].

It has been mooted whether it is the duty of the state or of the petitioner to procure the indictment and proceedings of the state court. I do not think this is the duty of the state. It suffers the removal in

invitum. It is in the attitude of protesting that the trial should be had in its own court. As the state does not desire the trial to be had in the federal court, and as that court cannot try the case until the indictment has been procured (or until it has been supplied by affidavit or otherwise), it follows that the duty of procuring or supplying the indictment does not rest on the state, but on the petitioner.

Where the petitioner has paid or tendered to the clerk of the state court his proper fees, and the clerk fails or refuses to furnish a properly certified copy of the record, I think a writ of certiorari should issue. This has been done in some cases (Tennessee v. Davis, 100 U. S. 257, 25 L. Ed. 648; State v. Sullivan [C. C.] 50 Fed. 593), and the mere absence of an express provision in section 643 allowing such a writ to issue does not justify a refusal to issue it. Section 645 is authority for supplying the record either by affidavit "or otherwise."

The case of a pauper petitioner might present some difficulties. Neither the state statute (section 3538, Code 1887 [2 Code 1904, p. 1890]), nor the federal statute (Act July 20, 1892, c. 209, 27 Stat. 252; 1 U. S. Comp. St. 1901, p. 707), covers the case. If the petitioner were unable to pay the fees of the state clerk, perhaps the best course would be to supply the contents of the indictment by affidavit.

## What Record Necessary.

I am inclined to the opinion that the indictment is the only record necessary to be procured, but do not now wish to express a decided opinion on this question.

It seems a matter of small moment whether the original bill of indictment or a certified copy be sent up. If the original is sent here, it should properly be identified by a certificate of its authenticity attached to it; but if the court be satisfied in any manner of the genuineness of the document, it will be sufficient.

## Contesting the Jurisdiction.

Where an objection to the jurisdiction of the federal court appears on the face of the removal papers, the point is raised by a motion to remand. But when the party resisting the removal desires to contest the truth of some essential jurisdictional fact, an interesting question has been raised as to the proper procedure. In passing I may say that the contention that the petition, if good on its face, gives the federal court jurisdiction to try the cause on its merits, is not sound. A petition that is good on its face gives this court only a prima facie right to try the cause on its merits. Many cases to be hereinafter mentioned lead to this conclusion, and in Tennessee v. Davis, 100 U. S. 257, 25 L. Ed. 648, it is said:

"But the act of Congress authorizes the removal of any cause where the acts of the defendant complained of were done, or claimed to have been done, in the discharge of his duty as a federal officer. It makes such a claim a basis for the assumption of federal jurisdiction of the case, and for retaining it, at least until the claim proves unfounded."

To my mind it is a condition precedent to the right of the federal court to try the case on its merits that it be made to appear that the essential allegations of the petition for removal are true.

Some diversity of opinion exists as to the proper method of putting in issue the truth of the allegations in the petition, and as to the time and method of deciding such issue. In some circuits it is held that such an issue can be raised only by a plea in abatement to the jurisdiction, while in others any method, no matter how informal, by which the jurisdictional facts are traversed, is held sufficient. In Curnow v. Phœnix Ins. Co. (C. C.) 44 Fed. 305, a removal on the ground of diverse citizenship, Judge Simonton directed that a motion to remand be treated as a traverse of the petition to remove.

While a plea to the jurisdiction is not necessary, for the court will sua sponte remand the case if after the evidence is in it appears that it has not jurisdiction, yet the better practice is to file such a plea.

Such a plea, with replication, raises an issue of fact. The proper method of deciding such issue is also in some doubt. There is some authority tending to sustain the contention that the court should try this issue without the intervention of a jury. Smith v. Railroad Co. (C. C.) 30 Fed. 723; Eaton v. Calhoun (C. C.) 15 Fed. 158; Clarkhuff v. Railroad Co. (C. C.) 26 Fed. 468; Morris v. Gilmer, 129 U. S. 315, 9 Sup. Ct. 289, 32 L. Ed. 694. The weight of authority, however, seems to sustain the view that the jury should try the issue. Chic. R. Co. v. Ohle, 117 U. S. 123, 6 Sup. Ct. 632, 29 L. Ed. 837; Imperial Co. v. Wyman (C. C.) 38 Fed. 576–578, 3 L. R. A. 503; Gribble v. Pioneer Press Co. (C. C.) 15 Fed. 689; Dennistoun v. Draper, 5 Blatchf. 336, Fed. Cas. No. 3,804; Wells Co. v. Avon Mills (C. C.) 118 Fed. 193. These are not cases arising under section 643, but they are decisions of analogous questions under other statutes.

Whether or not Congress intended, when enacting section 643 or its prototypes, that the older statute, now section 648 [U. S. Comp. St. 1901, p. 321], requiring certain issues of fact to be tried by jury, should govern the practice in removals under section 643, when the issue is as to the jurisdiction, is possibly open to some doubt. I have not been able to find any authority bearing directly on this question, but I am inclined to the opinion that such an issue should be submitted to the jury, subject to the right of the court to direct a verdict on this issue when proper. Imperial Co. v. Wyman (C. C.) 38 Fed. 578.

When the issue as to jurisdiction is to be tried is also a question of some difficulty. Some authorities hold that a question of jurisdiction should be decided in advance of the trial on the merits. Jones v. Oceanic Co., 11 Blatchf. 406, Fed. Cas. No. 7,485; Clarkhuff v. R. R. Co. (C. C.) 26 Fed. 468. But in others the jurisdictional issue has been submitted at the same time as the issue on the merits. Wells v. Avon Mills (C. C.) 118 Fed. 193; Imperial Co. v. Wyman (C. C.) 38 Fed. 578. See, also, Wood v. Matthews, 2 Blatchf. 370, Fed. Cas. No. 17,-955; Dennistoun v. Draper, 5 Blatchf. 336, Fed. Cas. No. 3,804. It is somewhat illogical to swear the jury to try the case on its merits while a serious contention that the court has no jurisdiction remains undecided. But the short time between the different terms of the Circuit Court in this district, and the demands on the time at the disposal of the judges of that court, present practical objections to holding what may be in effect two trials of the same cause of such weight that I think it proper to hold that both issues may be tried at the same time. To be

sure, this course loses sight of the singleness of issue so much sought for in the common-law system of pleading, and the questions before the jury are somewhat confused by the fact that each party has the affirmative of one issue and the negative of the other. But these objections are not insuperable. As to the first it will be remembered that a Virginia statute allows a defendant in civil cases to file as many pleas as he desires, and frequently in jury trials there are several issues laid before the jury at the same time. In Whart. Cr. Pl. & Pr. (9th Ed.) § 488, it is laid down that when a defendant in a criminal case pleads not guilty, and also at the same time pleads autrefois acquit, there must be a verdict on each plea. The confusion engendered by the fact that the parties have not one the affirmative and the other the negative of both issues is, I think, more imaginary than real. In all ordinary cases the issue as to jurisdiction will be easily decided. And an instruction by the court that the jury will not return a verdict on the issue of guilty or not guilty if they find that the court has not jurisdiction will tend to reduce such confusion of thought as may exist.

In a very large majority of ejectment cases in this district there are at least two distinct issues submitted to the jury. One is whether or not the plaintiff's title papers, when properly located, cover the land in dispute. Another is whether or not the defendant has had the requisite adversary possession to bar the plaintiff's right of recovery. The affirmative of the first issue is held by the plaintiff, while the affirmative of the second is held by the defendant. More instances might be given of several issues, where neither side has the affirmative of all the issues. Thus, in the action of debt, where there are pleas of nil debet and of set-off.

### When Plea to Jurisdiction Should be Filed.

Ordinarily in courts of general jurisdiction pleas in abatement are not favored, and must be filed at an early stage in the proceedings. The federal courts are, in some sense, of limited jurisdiction, and will remand a removed cause at any stage of the case if it appears that the court has not jurisdiction. It follows that the ordinary technical rules as to the time of filing pleas in abatement do not apply in removal cases. If offered too late to have the issue tried by the jury, the effect can be obtained by a motion to remand, which the court can pass upon after hearing the evidence.

### Burden of Proof.

On the issue raised by plea to the jurisdiction the burden of proof is on the petitioner. 18 Ency. Pl. & Pr. 374; Carson v. Dunham, 121 U. S. 421, 7 Sup. Ct. 1030, 30 L. Ed. 992: Kansas City R. Co. v. Daughtry, 138 U. S. 303, 11 Sup. Ct. 306, 34 L. Ed. 963.

### The Trial.

In the dissenting opinion of Mr. Justice Clifford in Tennessee v. Davis, 100 U. S. 257, 25 L. Ed. 648, after mentioning many of the difficulties presented by a trial under section 643, he says:

"* * * The provision is a mere jumble of federal law, common law, and state law, * * * which, in legal effect, amounts to no more than a

direction to a judge sitting in such a criminal trial to conduct the same as well as he can. * * *"

This language was used in 1879, and, as Congress has not seen fit to prescribe the procedure in such trials, it is the duty of the federal courts to devise such rules of procedure as will best do justice to both parties. As the trial is for an alleged offense against a state law, prosecuted by the state, it follows that in the most material respects the state law should be followed. Just where to abandon the state practice and follow the federal practice will present some nice questions. In the opinion of the majority in Tennessee v. Davis, supra, it is said:

> "The Circuit Courts of the United States have all the appliances which are needed for the trial of any criminal case. They adopt and apply the laws of the state in civil cases, and there is no more difficulty in administering the state's criminal law. * * * Even in cases of criminal prosecutions for alleged offenses against a state, in which arises a defense under United States law, the general government should take cognizance of the case and try it in its own courts, according to its own form of proceeding."

I construe this as a direction to adopt the state law in all respects except as to mere matters of procedure. For instance, the order of the introduction of evidence, the regulation of the arguments by counsel to the jury, and the right to direct verdicts in proper cases, seem to me mere questions of practice, to be regulated by the rules prevailing in the federal court. In the federal courts the juries find only that the defendant is guilty or not guilty, and the court fixes the punishment. Under the state law it is the duty of the jury in many cases, on finding a defendant guilty, to fix the punishment. This seems to me to be a substantive right, and not a mere matter of practice, and I incline to the opinion that the state law in this respect should be followed.

### Obtaining the Jury.

Under section 800, Rev. St. U. S. [U. S. Comp. St. 1901, p. 623], the juries in the federal courts are obtained practically under the state law. In misdemeanor cases no reason now suggests itself why one of the regular panels, subject to examination on voir dire (Code 1887, §§ 3154, 4048 [2 Code 1904, pp. 1664, 4048]), should not be used. In felony cases a special venire is issued. Code 1887, § 4018 [2 Code 1904, p. 2115], as amended Acts 1902–04, p. 882, c. 553, and section 4019 et seq., Code 1887 [2 Code 1904, p. 2115], regulate the procedure for obtaining the jury. When sixteen veniremen have been obtained, the next step is to arraign the defendant. In some states it is held that a defendant may waive this formality. And I am inclined to think that it may be waived in any federal court. U. S. v. Mollay (C. C.) 31 Fed. 19. The arraignment in this state consists merely in reading the indictment to the defendant by the clerk, and thereafter asking him if he is guilty or not guilty. After the arraignment the sixteen veniremen are sworn on voir dire "to answer truly such questions as may be propounded," and are examined by the judge, or counsel, or both, touching relationship to the defendant, interest, partiality, etc.

During or immediately after this examination either side may challenge for cause, without restriction as to number. Such challenges are forthwith tried by the court. If the panel be reduced, other veniremen are secured, either by issue of a further venire facias, or from the by-

standers, until a panel of sixteen free from legal objection has been obtained. This list is then submitted to the counsel for the defendant, who may strike therefrom any four names. If the defense declines to strike off names, or less than four names, the procedure is regulated by section 4023, Code 1887 [2 Code 1904, p. 2121].

The twelve jurors for service having been ascertained, the clerk reads to the jury the indictment, swears the jury, and delivers to them a charge advising them of the punishment they may inflict. A form, which has been in general use in this state in murder trials, reads as follows:

### "Charge to Jury, Given by the Clerk.

"You are to inquire whether the prisoner be guilty or not guilty as charged in the indictment.

"If you find him guilty, you are then further to inquire whether it be murder in the first or in the second degree.

"If you find him guilty of murder in the first degree, say so and no more; the law fixes the punishment.

"But if you find him guilty of murder in the second degree, say that; and then you are to ascertain the term of his imprisonment in the penitentiary, so as such term be not less than 5 nor more than 18 years.

"If you find him not guilty either of murder in the first or second degree, you may find him guilty of voluntary manslaughter, and, if so, then you are further to ascertain the term of his imprisonment in the penitentiary, so that such term be not less than 1 nor more than 5 years.

"Not finding him guilty of murder in the first or second degree or of voluntary manslaughter, you may yet find him guilty of involuntary manslaughter.

"And if you find him guilty only of involuntary manslaughter, you may impose a fine of not less than $5, or you may imprison him in jail, in your discretion, or you may impose both fine and imprisonment in jail.

"Or failing to find him guilty either of murder in the first of second degree or of voluntary or involuntary manslaughter, you may yet find him guilty of an assault, and for the assault impose on him a fine not less than $5.00, or you may both imprison him in jail and fine him, the term of imprisonment to be as you may determine.

"If you find him not guilty, say so and no more."

### Challenges.

It was held in Georgia v. O'Grady, Fed. Cas. No. 5,352, 3 Woods, 496, 24 Int. Rev. Rec. 5, that the number of peremptory challenges is governed by the federal and not by the state law. I find no other authority to this effect, except that the above case is followed in 18 Ency. Pl. & Pr. p. 184. The federal statute (Rev. St. § 819 [U. S. Comp. St. 1901, p. 629]), in so far as it relates to challenges in capital and other felony cases, clearly applies only in cases in which the United States is the prosecutor. The remainder of the section may possibly apply in misdemeanor cases; but I incline to the view that the right of challenge is to be regarded as a substantive right, governed by the state law.

### Competency of Witnesses.

It has been held that in criminal trials in the federal courts the competency of witnesses is governed, except so far as changed by federal statutes, by the rules of the common law in force in the state where the trial is held, in 1789. U. S. v. Reid, 12 How. 361, 13 L. Ed. 1023; Graves v. U. S., 150 U. S. 120, 14 Sup. Ct. 40, 37 L. Ed. 1021; U. S. v. Jones (D. C.) 32 Fed. 569; U. S. v. Logan (C. C.) 45 Fed. 872;

Logan v. U. S., 144 U. S. 263, 12 Sup. Ct. 617, 36 L. Ed. 429. These were cases in which the defendants were tried for offenses against the United States. In the class of cases now under discussion the competency of witnesses should, I think, be governed by the present state law. Consequently the comparatively recent Virginia statute, allowing a wife to testify in behalf of her husband, for instance, would in a removal case be followed.

### Directing Verdict.

Where the issue of fact as to the jurisdiction has been submitted to the jury, I entertain no doubt of the right of the judge, in a proper case, to direct the jury to find a verdict on this issue either way. So, too, on the issue of guilty or not guilty, I am of opinion that the court can direct a verdict of not guilty. The power to direct verdicts is one of the inherent powers of the federal courts, most frequently used to prevent waste of their much-demanded time, which is not necessarily surrendered simply because an offense against the state is being tried. All the reasons for the exercise of this power in other cases apply in these removed cases.

### Confinement of the Jury.

In felony trials in the courts of this state, where the punishment may be death or confinement in the penitentiary for 10 years or more, it is a fixed rule of law that the jury must during the recesses of the court be kept separate, under the charge of the sheriff. Philip's Case, 19 Grat. 485, 540, and cases infra. The jury and the officers are boarded and lodged at some convenient house, and the officers are sworn not to speak to the jurors, nor to allow any one else to speak to them, relative to the trial. Barnes' Case, 92 Va. 806, 23 S. E. 784. It is not necessary to thus confine the jury until they have been sworn to try the issue (Tooel's Case, 11 Leigh, 714; Epes' Case, 5 Grat. 681; Curtis v. Com., 87 Va. 595, 13 S. E. 73), nor until some evidence has been introduced (Martin v. Com., 2 Leigh, 746 [807]). But when adjourned, after having been sworn and after having heard some evidence, it is reversible error if they be not confined. And the record must affirmatively show the fact, though it need not show that the bailiff was sworn. Barnes' Case, 92 Va. 794, 23 S. E. 784. This is, I think, not a mere matter of procedure, but a right of the parties, which must be allowed in trials removed to the Circuit Court under section 643. While I regard the practice of confining the jury as a relic of the Dark Ages, entailing frequently great and unnecessary hardship on the jurors, yet it is a rule of the state law which should be followed until the Legislature sees fit to abolish it.

In the book of "Instructions to United States Marshals, Attorneys, Clerks, and Commissioners: January 1, 1899," issued by the Department of Justice, at page 97, § 639, it is said:

"Meals and lodging for jurors, and bailiffs in charge of jurors, can only be allowed in government cases and when ordered by the court. The department has received numerous inquiries from marshals asking what they shall do in cases where the court orders them to furnish meals to jurors in cases to which the United States is not a party. The department cannot authorize such payments, as there is no available appropriation from which they may be made."

See, also, Edition of 1904, § 871. The marshal is the disbursing officer of the government. Usually he makes all disbursements at his own risk. With the single exception, so far as I am advised, of the fees of jurors and witnesses in cases in which the United States is a party (section 855, Rev. St. [U. S. Comp. St. 1901, p. 657]), the court has no power to authorize, and consequently none to direct, disbursements by the marshal. In view of the awkward dilemma here presented, the only course that presents itself is to have the marshal ask the attorney general for advance authority to cover the cost of meals and lodgings of jurors and bailiffs in all necessary cases removed under section 643. I think such authority is never refused, notwithstanding the foregoing dictum in the book of instructions.

### If State Authorities Refuse to Prosecute.

In State v. Emerson (C. C.) 8 Fed. 411, the state officials refused to prosecute. The court had the jury sworn, and directed a verdict of not guilty. This seems to me to be the proper course to pursue in such cases. The offense alleged is one against the state laws, to be prosecuted by the state authorities, and defended by the United States attorney. If, after reasonable opportunity to prosecute, the state officers decline or fail so to do, it is clear that the defendant should not be left under the charge without trial. And since there is no prosecutor, the proper course is to direct a verdict of acquittal.

### Costs.

As heretofore observed, the federal court has no authority to order the payment of witness fees except in cases in which the federal government is a party. Consequently the court cannot make any order as to the payment of the witnesses for either side. In many cases, under special authority from the department of justice, the marshal pays the witnesses of the defendant. This authority is seldom withheld. In rare instances like authority has been given. the marshal to pay the witnesses summoned for the state, though I fail to see why the state should not herself in the first instance pay her costs in these removed prosecutions.

### Execution of Sentence.

Inasmuch as the defendant is prosecuted for an offense against the state law, it follows, in cases of conviction, that the state should execute the sentence. If the verdict and sentence be that the defendant be hanged, the order should direct that he be delivered to the sheriff of the county from which the case came for execution of sentence. If the sentence be imprisonment, the order should direct the marshal to deliver the defendant to the sheriff for transportation to jail or the state penitentiary, as the case may be. If the state authorities decline to receive the convict, an order should be made directing the marshal to liberate him. I perceive no reason why the federal government should execute such sentences.

If the jury merely imposes a fine on the defendant, and it is not paid, he should, I think, be delivered to the sheriff of the proper county. If the fine should be forthwith paid by the defendant, I think the clerk of this court should receive it, and pay the sum to the clerk of the court

from which the prosecution was removed; reserving, however, so much of the sum as represents the costs in the federal court, if the costs be adjudged against the defendant.

The following authorities may be advantageously consulted concerning the questions hereinabove considered: Tennessee v. Davis, 100 U. S. 257, 25 L. Ed. 648; Davis v. South Carolina, 107 U. S. 597, 27 L. Ed. 574; Virginia v. Paul, 148 U. S. 107, 13 Sup. Ct. 536, 37 L. Ed. 386; Chic. R. Co. v. Ohle, 117 U. S. 123, 6 Sup. Ct. 632, 29 L. Ed. 837; Carson v. Dunham, 121 U. S. 421, 7 Sup. Ct. 1030, 30 L. Ed. 992; Kansas City R. Co. v. Daughtry, 138 U. S. 303, 11 Sup. Ct. 306, 34 L. Ed. 963; Abranches v. Schell, Fed. Cas. No. 21, 4 Blatchf. 256; Dennistoun v. Draper, Fed. Cas. No. 3,804, 5 Blatchf. 336; Findley v. Satterfield, Fed. Cas. No. 4,792, 3 Woods, 504; Fisk v. Union Pac. R. Co., Fed. Cas. No. 4,827, 6 Blatchf. 362; Galvin v. Boutwell, Fed. Cas. No. 5,207, 9 Blatchf. 470; Georgia v. O'Grady, Fed. Cas. No. 5,352, 3 Woods, 496, 24 Int. Rev. Rec. 5; Murray v. Patrie, Fed. Cas. No. 9,967, 5 Blatchf. 343; State v. Port (C. C.) 3 Fed. 117; Hoyt v. Wright (C. C.) 4 Fed. 168; Mackaye v. Mallory (C. C.) 6 Fed. 750, 751; Georgia v. Bolton (C. C.) 11 Fed. 217; Eaton v. Calhoun (C. C.) 15 Fed. 155; Gribble v. Pioneer Co. (C. C.) 15 Fed. 689; State v. Fletcher (C. C.) 22 Fed. 776; Clarkhuff v. Wisc. R. Co. (C. C.) 26 Fed. 465; Kessinger v. Hinkhouse (C. C.) 27 Fed. 884; Smith v. Chic. R. Co. (C. C.) 30 Fed. 722; Anderson v. Appleton (C. C.) 32 Fed. 857; Imperial Co. v. Wyman (C. C.) 38 Fed. 574, 3 L. R. A. 503; North Carolina v. Kirkpatrick (C. C.) 42 Fed. 689; Curnow v. Phœnix Co. (C. C.) 44 Fed. 305; Goodnow v. Litchfield (C. C.) 47 Fed. 754; State v. Sullivan (C. C.) 50 Fed. 593; Carico v. Wilmore (D. C.) 51 Fed. 196, 200; Com. v. Bingham (C. C.) 88 Fed. 561; 18 Ency. Pl. & Pr. 181, 372, et seq.